**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000453
29-NOV-2019
09:26 AM**

NO. CAAP-17-0000453

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


PROVIDENT FUNDING ASSOCIATES, L.P., Plaintiff-Appellee,
v. GISELE M.L. GARDNER, Defendant/Cross-Claim
Plaintiff/Cross-Claim Defendant/Appellant, and
CITIBANK (SOUTH DAKOTA) N.A., Defendant-Appellee,
and TRAVIS WITTMEYER; KANOA BRISTOL; BLUE WAVE
INVESTMENT SOLUTIONS, LLC, Defendants/Cross-Claim
Defendants/Cross-Claim Plaintiffs/Appellees, and
JOHN DOES 1-50, JANE DOES 1-50, AND DOE ENTITIES
1-50, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-2313)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Chan, JJ.)

Defendant/Cross-Claim Plaintiff/Cross-Claim
Defendant/Appellant Gisele M.L. Gardner (Gardner) appeals from
the Circuit Court of the First Circuit's (1) January 6, 2017
"Order Denying [Gardner's] Motion to Compel and For Sanctions
against Defendants Travis Wittmeyer, Kanoa Bristol, and Blue Wave
Investment Solutions, LLC, Filed November 23, 2016" (Order
Denying Sanctions);[1] (2) May 5, 2017 Order Granting Plaintiff
Provident Funding Associates, L.P.'s (Provident)[2] Motion for
Confirmation of Sale, Deficiency Judgment, For Writ of Possession

---

[1]     The Honorable Bert I. Ayabe entered the Order Denying Sanctions.

[2]     Gardner moved to dismiss the appeal against Provident on
December 15, 2017. The ICA granted the partial dismissal over the objection
of Wittmeyer on January 11, 2018.

and Cancellation of Notice Of Pendency of Action (Order Confirming Sale); and (3) the May 5, 2017 Judgment.[3]

Gardner argues that the Circuit Court erred:

1. In "conclud[ing] the parties did not have an agreement for private sale;"

2. By (1) concluding the Stipulation was not enforceable or that Defendants/Cross-Claim Defendants/Cross-Claim Plaintiffs/Appellees Travis Wittmeyer, Kanoa Bristol, and Blue Wave Investment Solutions, LLC (collectively Wittmeyer) had not breached the stipulation, and (2) failing to strike Wittmeyer's statement of facts as presented in Wittmeyer's memorandum in opposition to the Motion to Compel; and

3. In denying her request for sanctions against Wittmeyer and their attorneys.

After a careful review of the points raised and the arguments made by the parties, the record on appeal, and the applicable legal authorities, we resolve Gardner's appeal as follows and affirm.

1. The Circuit Court's finding there was no agreement for a private sale was not clearly erroneous. Gardner contends that the Circuit Court erred "in conclud[ing] there was no agreement by the parties to a private sale," relying upon the written September 27, 2016 First Stipulation to Continue Foreclosure Sale (Stipulation) as proof of the agreement.

Regardless of whether the Stipulation is a "settlement agreement," or a stipulation, we interpret it using contract law principles. See Standard Mgmt., Inc. v. Kekona, 99 Hawai'i 125, 133-34, 53 P.3d 264, 272-73 (App. 2001) (using contract principles to interpret settlement agreement calling for stipulation to dismiss). "A party who relies upon a contract must prove its existence[.]" Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 504, 100 P.3d 60, 74 (2004) (quoting Hertzog v. Hertzog, 29 Pa. St. 465, 469 (1857)); see also Boteilho v. Boteilho, 58 Haw. 40, 42, 564 P.2d 144, 146 (1977) (party seeking to enforce oral contract must prove its terms "by

---

[3] The Honorable Jeannette H. Castagnetti entered the May 5, 2017 Order Confirming Sale and Judgment.

2

clear and convincing evidence"). A binding contract requires "a meeting of the minds on all essential elements or terms." Earl M. Jorgensen Co. v. Mark Constr., Inc., 56 Haw. 466, 470, 540 P.2d 978, 982 (1975) (citations omitted). "To be enforceable, a contract must be certain and definite as to its essential terms." Boteilho, 58 Haw. at 42, 564 P.2d at 146.

The intent of the parties is a question of fact. Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1145 (1984). "The intention of the parties is to be gathered from the whole instrument[.]" Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Hawai'i 300, 305, 944 P.2d 97, 102 (App. 1997) (quoting Coney v. Dowsett, 3 Haw. 685, 686 (1876)). Ambiguity in the terms of the document raises questions regarding the parties' intent to agree. Found. Int'l, Inc. v. E.T. Ige Constr., Inc.,, 102 Hawai'i 487, 497, 78 P.3d 23, 33 (2003); see also 1 Corbin, Contracts § 4.10 (2019). "[W]hether a contract contains ambiguous terms is a threshold question of law for the court to decide." Wittig v. Allianz, A.G., 112 Hawai'i 195, 201, 145 P.3d 738, 744 (2006). "A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning." Airgo, Inc. v. Horizon Cargo Transp., Inc., 66 Haw. 590, 594, 670 P.2d 1277, 1280 (1983).

Looking at the Stipulation, Paragraphs 2 and 3 call upon the parties to "cooperate" in the sale of the property. The word cooperate has two definitions; one definition requires collaboration, while another requires compliance with another's directives. Macmillan Dictionary, https://www.macmillandictionary.com/us/dictionary/american/cooperate (last visited Nov. 26, 2019); see also Merriam-Webster's Collegiate Dictionary at 275 (11th ed. 2003). Thus, "cooperate" is an ambiguous term.[4]

"[P]arol evidence is admissible to explain the circumstances surrounding the execution of the contract to lend the trial judge insight into the meaning of the contract."

---

[4]     The contract principle of resolving ambiguity against the drafter, see, e.g., Coney, 3 Haw. at 686, cannot be applied here as the Stipulation was drafted by Provident.

Hokama v. Relinc Corp., 57 Haw. 470, 474, 559 P.2d 279, 282 (1977). In examining the circumstances around contract formation, "[t]he existence of mutual assent or intent to accept is determined by an objective standard." Siopes v. Kaiser Found. Health Plan, Inc., 130 Hawai'i 437, 447, 312 P.3d 869, 879 (2013) (quoting Douglass v. Pflueger Hawaii, Inc., 110 Hawai'i 520, 531, 135 P.3d 129, 140 (2006)).

> A party's words or acts are judged under a standard of reasonableness in determining whether he [or she] has manifested an objective intention to agree. All reasonable meanings will be imputed as representative of a party's corresponding objective intention. It follows that the purely subjective, or secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties. Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties.

Standard Mgmt., 99 Hawai'i at 134, 53 P.3d at 273 (quoting Jorgensen, 56 Haw. at 470-71, 540 P.2d at 982) (brackets in original, format altered, internal quotation marks omitted).

At the December 20, 2016 hearing, the three parties' counsel provided argument regarding the intent behind the Stipulation. Gardner's counsel argued the Stipulation arose after attempts to settle the related civil case, pointing to a hearing where "it was strongly pointed out that a joint sale would be a way to resolve this." Wittmeyer's counsel told the court that his clients "continued to propose to proceed on a mutual basis with a mutually acceptable realtor" to accomplish such a sale. Provident's attorney maintained that the Stipulation was drafted by Provident's counsel to provide the bank with some assurance that the parties would work to settle their "dysfunction" as an alternative to the foreclosure sale but gave them a deadline so the bank "would not be waiting indefinitely[.]"

The parties argue on appeal that the Stipulation was meant to be a stipulation but each cite different purposes. If the Stipulation was indeed intended to be a settlement agreement between Gardner and Wittmeyer, it lacked written terms to that effect. It contains no waiver of the disputed rights to the property, no agreement to settle the related civil case, no agreement to terminate the notice of pendency of action filed

4

based on the related civil case, and no agreement to release Gardner's and Wittmeyer's indemnification and contribution cross-claims against each other in this case. "The essential elements of an agreement to settle a case are a manifestation of agreement (an offer and acceptance) on payment, <u>release, and case dismissal terms</u> (the consideration) between parties who have the capacity and authority to agree." <u>Gates Corp. v. Bando Chem. Indus.</u>, 4 F. App'x 676, 685-86 (10th Cir. 2001) (citing <u>Worthy v. McKesson Corp.</u>, 756 F.2d 1370, 1373 (8th Cir. 1985)) (emphasis added); <u>Tocci v. Antioch Univ.</u>, 967 F. Supp. 2d 1176, 1198 (S.D. Ohio 2013) (citing <u>Riordan's Sporting Goods, Inc. v. Riordan's Sports & Equip., LLC</u>, 2003 Ohio 3878 at *3 (Ohio Ct. App. 2003) ("disagreement over . . . whether the agreement releases all pending claims in the lawsuit renders terms too unclear and uncertain for a court to enforce the agreement."); <u>MKM Eng'rs, Inc. v. Guzder,</u> 476 S.W.3d 770, 778 (Tex. App. 2015) ("Essential or material terms of a . . . settlement agreement include payment terms and release of claims.").

The Circuit Court also considered and rejected the notion that the parties had an agreement for sale of land. In an agreement for the sale of land, the "[e]ssential terms are the identification of the parties, a description of the property sold, the price, the time and manner of payment and any other terms in the agreement which are essential to the agreement." <u>In re Application of Sing Chong Co., Ltd.</u>, 1 Haw. App. 236, 239, 617 P.2d 578, 581 (1980) (quoting <u>Francone v. McClay</u>, 41 Haw. 72 (1955)). The plain language of the Stipulation indicates that material terms regarding a sale of the property were missing. For example, the second paragraph requires Provident's approval of an unidentified buyer and does not specify the minimum price that would be acceptable to the parties as a "full payoff" in a private sale; the third paragraph acknowledges that the April

contract[5] also depends on Provident's approval;[6] the fifth paragraph provides "[t]he disposition of any excess proceeds will be for the remaining parties and the Court to determine/decide."

An agreement that leaves an essential element "to be settled by further negotiation . . . is merely an agreement to agree and is not a valid and binding contract." Carson v. Saito, 53 Haw. 178, 181, 489 P.2d 636, 638 (1971). "[A]greements to agree are unenforceable." Globalmart, Inc. v. Posec Hawaii Inc., 127 Hawai'i 412, 279 P.3d 77, No. 28249, 2012 WL 1650697 at *7 (App. May 10, 2012) (mem.); see also Honolulu Waterfront Ltd. P'ship v. Aloha Tower Dev. Corp., 692 F. Supp. 1230, 1235 (D. Haw. 1988), aff'd, 891 F.2d 295 (9th Cir. 1989) ("[T]he overwhelming weight of authority holds that courts will not enforce an agreement to negotiate.").

Given the essential terms the parties had left to work out regarding the sale of the property, the Circuit Court was not clearly erroneous in finding lack of agreement on the sale. Island Directory Co., Inc. v. Iva's Kinimaka Enters., Inc., 10 Haw. App. 15, 23, 859 P.2d 935, 940 (1993). The court could not imply the essential terms necessary for enforcement. Cf. Sing Chong, 1 Haw. App. at 240, 617 P.2d at 581 ("[W]here the agreement does not specify or fully express an essential term but does specify the method of ascertaining it, that term shall be deemed to be complete and certain."). Where agreement cannot be ascertained from terms in the agreement or implied in law, there is no binding contract. Jorgensen, 56 Haw. at 470, 540 P.2d at 982.

2. We do not need to consider whether Wittmeyer breached the purported contract because there was no binding contract. The issue of a breach of contract is to be addressed only after "a contract has been found[] and its essential terms have been identified and determined to be enforceable[.]" Moran v. Guerreiro, 97 Hawai'i 354, 371, 37 P.3d 603, 620 (App. 2001).

---

[5]     Gardner entered a purchase contract (the April contract) with two third-party buyers on April 29, 2016, for $700,000.

[6]     Provident had not yet approved the April contract as a short sale when the Stipulation was signed.

The Circuit Court did not err in refusing to grant Gardner's Motion to Compel performance of the April contract.

3. Gardner failed to demonstrate abuse of discretion by the Circuit Court's denial of her motion for sanctions. A court cannot invoke its inherent powers to sanction without a specific finding of bad faith. Bank of Hawaii v. Kunimoto, 91 Hawai'i 372, 389-90, 984 P.2d 1198, 1215-16 (1999). This finding is the "distinction [that] must be made between zealous advocacy and plain pettifoggery." Id., at 390, 984 P.2d at 1216 (citation omitted).

A trial court's decision to refuse to impose sanctions is "due a substantial degree of deference." Deutsche Bank Nat'l Tr. Co. v. Greenspon, 143 Hawai'i 237, 244, 428 P.3d 749, 756 (2018) (quoting In re Hawaiian Flour Mills, Inc., 76 Hawai'i 1, 15, 868 P.2d 419, 433 (1994)) (internal quotation marks omitted). The denial of a motion for sanctions "will generally be upheld unless it 'exceeds' bounds of reason, all of the circumstances before it being considered." Id. at 244-45, 428 P.3d at 756-57 (citing Gap v. Puna Geothermal Venture, 106 Hawai'i 325, 339, 104 P.3d 912, 926 (2004)).

Bad faith is defined as an "actual or constructive fraud or a neglect or refusal to fulfill some duty . . . not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Kunimoto, 91 Hawai'i at 390, 984 P.2d at 1216 (quoting In re Estate of Marks, 957 P.2d 235, 241 (Wash. Ct. App. 1998)) (internal quotation marks omitted).

Gardner alleges that Wittmeyer and attorneys should be sanctioned for their representations that a "potential buyer" would bid (1) over $700,000 at auction and (2) at least $750,000 at auction, bids that ultimately failed to materialize. Although Gardner alleges they had a sinister motive in doing so, she concedes that Rose[7] had no obligation to bid. The representations that there would be higher bids, in fact, helped Gardner because they were the basis for re-opening the public

---

[7] Brian Rose made a written offer to buy the property for $789,000 in September 2016 to Gardner and Blue Wave Investment Solutions.

sale, which garnered a higher price for the property and whose confirmation Gardner does not challenge on appeal. Gardner fails to produce any evidence that the claims were made fraudulently.

The transcript of the December 20, 2016 hearing indicates that Wittmeyer's counsel told the court that the bidder was not his client. The Circuit Court weighed the comments, judged Wittmeyer's counsel's credibility, and ruled accordingly. The credibility of witnesses is "within the province of the trial court and, generally, will not be disturbed on appeal." Kunimoto, 91 Hawai'i at 390-91, 984 at 1216-17. The Circuit Court did not exceed the bounds of reason nor abuse its discretion in denying Gardner's motion for sanctions.

For the foregoing reasons, the May 5, 2017 Order Granting Plaintiff Provident Funding Associates, L.P.'s Motion for Confirmation of Sale, Deficiency Judgment, For Writ of Possession and Cancellation of Notice Of Pendency of Action and the May 5, 2017 Judgment entered by the Circuit Court of the First Circuit are affirmed.

DATED: Honolulu, Hawai'i, November 29, 2019.

On the briefs:

Glen T. Hale,
for Defendant-Appellant.

Chief Judge

Matthew M. Matsunaga and
Derek R. Kobayashi
(Schlack Ito),
for Defendants-Appellees.

Associate Judge

Associate Judge